STATE OF NEBRASKA, APPELLEE, V. MARLO BRYCE BEERMANN, APPELLANT.

436 N.W.2d 499

Filed March 3, 1989.  Nos. 87-968, 87-969, 87-970, 87-971, 87-975.

George H. Moyer, Jr., of Moyer, Moyer, Egley & Fullner, for appellant.

Robert M. Spire, Attorney General, and Linda L. Willard for appellee.

BOSLAUGH, CAPORALE, SHANAHAN, and GRANT, JJ., and CARLSON, D.J.

GRANT, J.

Following a jury trial on August 19 and 20, 1987, defendant-appellant, Marlo Bryce Beermann, was convicted in the district court for Dakota County on three charges of first degree sexual assault in violation of Neb. Rev. Stat. § 28-319 (Reissue 1985) (cases Nos. 87-968, 87-969, and 87-975), one charge of second degree sexual assault in violation of Neb. Rev. Stat. § 28-320 (Reissue 1985) (case No. 87-971), and one charge of sexual assault of a child in violation of Neb. Rev. Stat. § 28-320.01 (Reissue 1985) (case No. 87-970). Defendant was sentenced to 10 to 15 years' imprisonment for each of the three first degree sexual assault convictions, with the provision that the sentences be served consecutively. He was sentenced to 15 to 45 months' imprisonment for sexual assault of a child and to 5 to 10 years' imprisonment for the second degree sexual assault, with the provision that these sentences be served concurrently with the sentences imposed for the first degree sexual assaults.

On appeal, through the third attorney who has represented him in this matter, defendant contends the trial court erred in admitting certain corroborative testimony and opinion evidence, in failing to properly instruct the jury, in imposing excessive sentences, and in permitting the State to amend all five informations to allege that the crimes charged occurred "after the 20th day of February, 1984, and before the 20th day of February, 1987." We conclude that the amended informations did not inform defendant with reasonable

certainty of the offenses charged, nor did the amended informations and the instructions submitted to the jury furnish any identifiable basis for the jury's verdicts of guilty for conduct on five separate offenses. We therefore reverse defendant's convictions and remand for further proceedings on all charges.

These actions were filed in the county court for Dakota County on February 18, 1987, in five separate complaints. Three of the complaints were amended and were refiled on March 9, prior to a preliminary hearing held, without objection, on all complaints on that date. At the preliminary hearing, defendant was rearraigned on the three amended complaints and the other two pending complaints. After the preliminary hearing, defendant was bound over to district court on all five complaints. Five separate informations were filed in district court on March 11, 1987, numbered as separate cases as set out below. Why this was done, rather than filing one information with five counts, is not known. Defendant was arraigned in district court on April 14 and pled not guilty to all charges.

On August 7, 1987, the State filed motions to amend all five informations to allege that the crimes charged had occurred during the 3-year period "on or after the 20th day of February, 1984, and before the 20th day of February, 1987." Defendant filed a "Resistance to Motion to Amend," stating, in part, that "to amend the information[s] as proposed by the State does not sufficiently inform the defendant with reasonable certainty of the charge[s] against him so that he may adequately prepare his defense," and "to amend said information[s] at this time does not enable the defendant to plead to the judgment thereon as a bar to later prosecution for the same offense[s]."

On August 12, the district court sustained the State's motions to amend the informations. In four of the amended informations, filed on August 18, 1987 (the day before trial), it was alleged in part, in identical language, that defendant

did, on or after the 20th day of February A.D. 1984, and before the 20th day of February A.D. 1987 in the County of Dakota and State of Nebraska aforesaid, subject another person to sexual penetration and overcame the

victim by force, threat of force, express or implied, coercion, or deception; or knew or should have known the victim was mentally or physically incapable of resisting or appraising the nature of her conduct; or the actor is nineteen years of age or older and the victim is less than sixteen years of age; to-wit: the victim is a 10 year old female; Contrary to the form of the statute in such case made and provided . . . .

The other amended information charged that defendant, in the same timeframe, did "subject a female child, fourteen years of age or younger, to sexual contact and that the defendant is at least 19 years of age or older." The informations did not set out the victim's name, nor indicate that the victim was the same child in each case.

Defendant waived his right to have copies of the informations served 24 hours prior to arraignment, and was rearraigned on all charges on the morning of August 19. Defendant objected to the arraignment and filing of the amended informations on the grounds raised in his resistance to motion to amend, with counsel stating, "Here we are ready to try these cases and we now are informed of charges which look to be basically altogether different." His objections were overruled, and defendant entered pleas of not guilty to all charges. The trial immediately followed.

The record shows that on February 9, 1987, social worker Evonne Kramper contacted Dakota County Deputy Sheriff Robert Day about possible sexual abuse involving the victim in these cases, a 10-year-old child. The victim is the niece of defendant's second ex-wife, who lives with defendant. The victim had often visited defendant's family on weekends. At that time, defendant's family included himself, his ex-wife, and their two small children. On February 8, 1987, the victim's mother asked her why she no longer wanted to visit the defendant's residence. After some discussion, the victim told her mother that "Marlo has been doing icky things." The child revealed the nature of the problem to her mother, who contacted Kramper at the Nebraska Department of Social Services. Deputy Day subsequently conducted three interviews with the victim. Day was the State's sole witness at the

preliminary hearing.

The proceedings and the testimony, in both the preliminary hearing and at trial, in the five cases are summarized as follows. The proceedings are grouped as best this court can, from the information in the record before us. Five crimes were described in the preliminary hearing, and testimony as to five crimes was adduced at the trial.

The reference to various "counts" is made because that is the manner in which the various charges were referred to at trial and submitted to the jury. On the verdict form in each case, the Roman numeral count number is typed in. Also shown on the verdict form is a "case number," placed on the verdict in handwriting. Who made the correlations between the various case numbers and the counts, and when, is not known.

1. *County Court No. CR87-187; District Court No. 43-156 (submitted as "Count I"); Supreme Court No. 87-975*

A. The criminal complaint filed on February 18, 1987, alleged that defendant committed sexual assault of a child "on or about the 10th day of September A.D. 1985."

B. The amended complaint filed on March 9 alleged that defendant committed first degree sexual assault "on or about the 10th day of September A.D. 1985."

C. At the March 9 preliminary hearing, Deputy Day testified that the victim told him the very first sexual assault occurred one night in September 1985. She had just started fourth grade and was visiting the Beermann residence. The victim told Day that defendant's wife and his two children were sleeping and that she and defendant were watching television. The victim was sitting in a chair. Defendant brought her some pop and started "rubbing her privacy," that is, penetrating her vagina with his finger.

D. The information filed in district court on March 11 alleged that defendant committed first degree sexual assault "on or about the 10th day of September A.D. 1986." At this point, although no party has called this to our attention, and no objection was made, it is clear that an error has been made between the allegation of the complaint (September 10, 1985) and the allegation of the information (September 10, 1986).

Recognizing that the combination of the two different dates means that defendant has been bound over on an allegation of a 1985 crime which has been somehow transformed into a 1986 crime—a problem similar to that discussed hereinafter in connection with case No. 87-968—we will discuss the incident as if it had occurred as first alleged in the information on this count, i.e., September 10, 1986.

E. The amended information filed on August 18 alleged that defendant committed first degree sexual assault on or after February 20, 1984, and before February 20, 1987.

F. The victim's trial testimony which seems to be the basis of defendant's conviction on this charge was that she had first been sexually assaulted by defendant in the dining room of the Beermann residence sometime after a family vacation to California in August 1986, but before Christmas, and when she was in the fifth grade. She testified that she had been sleeping on the dining room floor on a sleeping bag. Defendant's two children were also in the room sleeping, and defendant's ex-wife was asleep on the waterbed in another room. Defendant got the victim some pop and told her to sit in a chair with him. While they watched television, defendant "started doing icky things" to her, sometimes putting his finger inside her vagina.

2. *County Court No. CR87-188; District Court No. 43-157 (submitted as "Count II"); Supreme Court No. 87-968*

A. The criminal complaint filed on February 18, 1987, alleged that defendant committed sexual assault of a child "on or about the 1st day of May A.D. 1986."

B. The amended complaint filed on March 9 alleged that defendant committed first degree sexual assault "on or about the 1st day of May A.D. 1986."

C. Day testified at the preliminary hearing that this incident occurred during May 1986, when it was hot outside. The victim told Day she was at the Beermann residence and defendant was giving the children rides on a small tractor. When it was her turn to get a ride, defendant had her sit on his lap and started rubbing her, putting his index finger into her vagina.

D. The information filed in district court on March 11 alleged that defendant committed first degree sexual assault

"on or about the 1st day of May A.D. 1986."

E. The amended information filed on August 18 alleged that defendant committed first degree sexual assault on or after February 20, 1984, and before February 20, 1987.

F. The victim's trial testimony which might support defendant's conviction on this charge was that an incident occurred in the Beermanns' downstairs bedroom on their waterbed, after the California vacation but before Christmas, when she was in fifth grade. Defendant, his ex-wife, their two children, and the victim were all sleeping together in the waterbed. The victim testified that defendant was right next to her on the bed and that he put his hand in her panties and "started rubbing on [her] privacy" with his finger.

3. *County Court No. CR87-189; District Court No. 43-158 (submitted as "Count III"); Supreme Court No. 87-969*

A. The criminal complaint filed on February 18 alleged that defendant committed sexual assault of a child "on or about the 1st day of December A.D. 1986."

B. The amended complaint filed on March 9 alleged that defendant committed first degree sexual assault "on or about the 1st day of December A.D. 1986."

C. Day testified at the preliminary hearing that this incident occurred on a weekend morning during December 1986 in the attic of the Beermann residence. The victim told Day she was in the fifth grade when it happened and that it was cold outside and there may have been snow on the ground. She was wearing a long shirt and pants, and defendant was wearing underwear. The victim stated that defendant woke her up and escorted her upstairs to the attic. He went back downstairs and returned with a small bottle of clear liquid. Defendant told the victim to take her clothes off. She did, and defendant put the clear liquid on her vaginal area and rubbed her, achieving digital penetration.

D. The information filed in district court on March 11 alleged that defendant committed first degree sexual assault "on or about the 1st day of December A.D. 1986."

E. The amended information filed on August 18 alleged that defendant committed first degree sexual assault on or after

February 20, 1984, and before February 20, 1987.

F. The victim's trial testimony possibly supporting defendant's conviction on this charge was that the incident happened in an upstairs bedroom in the Beermann home after the California vacation and before Christmas, while it was still warm outside. The victim testified that one morning while defendant's two children were asleep and his ex-wife was at work, defendant told her to follow him upstairs. When they were upstairs, defendant told her to take her clothes off. He also took his clothes off, told her to "get on him," and started rubbing her. Defendant left for a minute to go downstairs. He came back with lotion, using his finger to put the lotion "in my privacy and on his [penis]." The victim further testified, "He put his privacy in mine and then told me to go up and down." She testified that defendant then sexually penetrated her on a chair in the bedroom.

4. *County Court No. 87-190; District Court No. 43-159 (submitted as "Count IV"); Supreme Court No. 87-970*

A. The criminal complaint filed on February 18, 1987, alleged that defendant committed sexual assault of a child on or about January 17, 1987.

B. The complaint was amended by interlineation at the March 9 preliminary hearing to allege that defendant committed sexual assault of a child "on or about the 1st day of Dec. A.D. 1986."

C. Day testified at the preliminary hearing that during the encounter which was the basis for the charge in Supreme Court case No. 87-969, above, defendant also had the victim rub "his privacy," which was "where he goes to the bathroom and it looks like a worm."

D. The information filed in district court on March 11 alleged that defendant committed sexual assault of a child "on or about the 1st day of December A.D. 1986."

E. The amended information filed on August 18 alleged that defendant committed sexual assault of a child on or after February 20, 1984, and before February 20, 1987.

F. The victim's trial testimony supporting defendant's conviction on this charge was that an incident occurred in

defendant's car during the night, after the California vacation but before Christmas, when she was in the fifth grade. Defendant was taking the victim home and asked her to sit right next to him in the car. The victim testified that defendant unzipped her jeans and rubbed her vaginal area on the outside of her panties.

5. *County Court No. CR87-191; District Court No. 43-160 (submitted as "Count V"); Supreme Court No. 87-971*

A. The criminal complaint filed on February 18, 1987, alleged that defendant committed first degree sexual assault "on or about the 17th day of January A.D. 1987."

B. There was no amended complaint on this charge.

C. Day testified at the preliminary hearing that this incident occurred on a weekend approximately 3 weeks prior to February 9, 1987, in the children's bedroom at the Beermann residence. The victim told Day that she and the Beermanns' two children were sleeping in the bedroom. When defendant's small daughter left the room, defendant lay down beside the victim and started "rubbing her privacy," that is, inserting a finger into her vagina. This activity continued for approximately 1 hour. The victim told Day that defendant would come into the bedroom, rub her, lie down with her, leave for a while, and then return.

D. The information filed on March 11 alleged that defendant committed first degree sexual assault on or about January 17, 1987.

E. The amended information filed August 18 alleged that defendant committed first degree sexual assault on or after February 20, 1984, and before February 20, 1987. The information was again amended at trial, without objection, to allege that defendant committed second degree sexual assault on or after February 20, 1984, and before February 20, 1987.

F. The victim's trial testimony which seems to be the basis of defendant's conviction for second degree sexual assault was that an incident occurred in the kitchen of the Beermann residence, after the California vacation but before Christmas, when the victim was in the fifth grade. The victim testified that she woke up from a nap and went into the kitchen to eat some

cherries. Defendant subsequently entered the room and "started rubbing on [her] privacy," rubbing her with his hand by reaching underneath. His hands remained outside her clothing, but the rubbing hurt. The victim testified that defendant then "took his penis out of behind and asked [her] if [she] wanted to put it in [her] mouth, and [she] said no."

Defendant contends on appeal that he was denied due process of law because the amended informations, in failing to specify a date or time when the crimes were alleged to have occurred, did not inform him with reasonable certainty of the charges against him so that he could adequately prepare a defense, or plead to the judgments thereon as a bar to later prosecution for the same offenses. In *State v. Wehrle*, 223 Neb. 928, 930, 395 N.W.2d 142, 145 (1986), we stated:

[T]he function of an indictment, information, or complaint is twofold. With reasonable certainty, an indictment, information, or complaint must inform an accused concerning the crime charged so that the accused may prepare a defense to the prosecution and, if convicted, be able to plead the judgment of conviction on such charge as a bar to a later prosecution for the same offense.

In *Wehrle, supra,* and *State v. Piskorski*, 218 Neb. 543, 357 N.W.2d 206 (1984), we also stated that an information charging an offense in substantially the words of the statute is generally sufficient, that the time of occurrence is not an essential element of first degree sexual assault, and that charging an individual with the commission of a crime anytime within the statute of limitations is sufficient. These principles pertain only to the sufficiency of a formal criminal charge and do not address the notice function of a complaint, indictment, or information. The State contends that *Piskorski* authorizes the filing of informations of the type filed in this case.

An information may sufficiently allege the statutory elements of a criminal offense, yet fail to state with sufficient particularity information about the alleged crime which is vital to the preparation of a defense. The amended informations filed against defendant on the day before trial are defective in

the latter sense, and are also defective in the sense the amended informations do not differentiate the identical crimes charged. We hold that in a multicount information, or in the case of multiple informations consolidated for trial, other purposes of the information are to allege the crime charged with sufficient specificity to enable the fact finder to identify the crime charged with the facts alleged to constitute that crime, and to assist the trial judge in determining admissibility of evidence with relation to the various crimes alleged.

The amended informations in cases Nos. 87-968, 87-969, 87-971, and 87-975 all alleged, in identical language as set out above, that defendant committed a first degree sexual assault, in each count or case, "on or after the 20th day of February A.D. 1984, and before the 20th day of February A.D. 1987 . . . ." This situation is easily distinguished from the facts of *State v. Piskorski, supra*, and *State v. Wehrle, supra*.

Both of these cases involved first degree sexual assaults of a child. *Piskorski, supra*, was based on one charge, which the information alleged occurred " '[o]n or after December 11, 1982 and before December 25, 1982 . . . .' " 218 Neb. at 547, 357 N.W.2d at 210. At the close of its case, the State moved to amend the information to allege that the assault occurred on or after September 1, 1982, and before December 25, 1982, and to set out the name of the victim. The amendment was opposed, but the trial court permitted the change and this court approved, stating:

> This amendment did not make any new or additional charges nor raise matters with which Piskorski was not previously aware. It simply attempted to cause the information to conform to the proof. No one could determine the date of the assault any closer than sometime between September 1, 1982, and December 25, 1982.

*Id.*

In *Wehrle, supra*, two charges of first degree sexual assault were concerned. The first count charged an assault occurring " 'on or after February 1, 1984 and on or before March 31, 1984' "; the second charged an assault " 'on or about the 11th day of September, 1985.' " 223 Neb. at 929, 395 N.W.2d at 144. There was a clear differentiation of the two charges. Wehrle

challenged the first count, and the trial court quashed that count. On an appeal by the county attorney, this court reversed, holding that

> where an indictment, information, or complaint alleges commission of a crime, using the language of the statute defining that crime or terms equivalent to such statutory definition, a formal charge against an accused is sufficient. . . . By the clear terms of § 28-319(1), the time of occurrence is not an essential element of first degree sexual assault.

*State v. Wehrle*, 223 Neb. 928, 930-31, 395 N.W.2d 142, 145 (1986).

Similarly, in *Piskorski*, we stated, "[C]harging an individual with the commission of a crime anytime within the statute of limitations is sufficient." *State v. Piskorski*, 218 Neb. 543, 547, 357 N.W.2d 206, 210 (1984).

It is from the blind application of these holdings that the basic problem in these cases arises. We adhere to those statements, but it must be clear that, as set out above, both *Piskorski* and *Wehrle* recognized that the purpose of a complaint or information is twofold: to apprise a defendant with reasonable certainty concerning the crime so that (1) the accused person may prepare a defense to the prosecution and (2) if convicted, the accused may plead the judgment of conviction on the charge as a bar to a later prosecution for the same offense. *Piskorski, supra*; *Wehrle, supra*; *State v. Adams*, 181 Neb. 75, 147 N.W.2d 144 (1966); *Cowan v. State*, 140 Neb. 837, 2 N.W.2d 111 (1942). The informations in *Wehrle* and *Piskorski* satisfied the twofold test.

Applying that basic premise to the case before us, it is clear that the amended informations do not advise the defendant with reasonable certainty of the crimes charged against him. With the allegations of the four amended informations, defendant was faced with defending four charges, each alleging that he had committed a specific criminal act on an unnamed victim on four unspecified occasions over a 3-year prior. Prior to the amendment, defendant was charged with four offenses, occurring on or about September 10, 1986; May 1, 1986; December 1, 1986; and January 17, 1987. Defendant had to

know that "on or about" had been interpreted in *Piskorski* and *Wehrle* to mean a period of time from 2 to 4 months and that, in *Piskorski*, the amendment was made to conform with the proof. The State, in the instant cases, before the trial began, and thus not to conform to the evidence, changed the alleged times to a 3-year period.

The change, in the manner requested, was absolutely unnecessary in that, in proving each offense on the day after the wide-sweeping amended informations were filed, the State's evidence narrowed the time of the offense to a period after the victim's summer California vacation, which other testimony indicated was in late August 1986; while the victim was in fifth grade in school, which was established to be in the fall of 1986; and before Christmas. This time period was established as to each alleged incident, by the testimony of the child. The time period could have been easily, and properly (so far as the time element is concerned), alleged to have been between September 1, 1986, and December 25, 1986—a time period which, by coincidence, is exactly that approved in *Piskorski, supra*. Then, a clean and relatively precise question would have to be determined by the trial court; that is, whether the informations charging offenses on or about May 1, 1986, and January 17, 1987, could be amended.

> [I]n the absence of demonstrated prejudice to a defendant's substantial right, a formal charge in prosecuting a criminal offense . . . alleging a date or period within the statutory time specified to commence prosecution for the crime charged is sufficient, unless the particular offense charged requires establishment of a specific time as an essential element of that crime charged.

*State v. Wehrle, supra* at 934, 395 N.W.2d at 147. In the present case, defendant has demonstrated prejudice to his substantial right to be adequately informed of the charges against him. On the face of the amended informations, defendant was charged with the same crime, first degree sexual assault, four times. Except for the docket numbers, the informations were identical, and the State made no attempt to distinguish the four offenses, by time or place of occurrence or otherwise, in the charging documents.

The evidence adduced at trial and the prosecutor's technique in eliciting testimony from the victim demonstrate that the State could have alleged specific acts of first degree sexual assault instead of four undifferentiated incidents. In the trial, to differentiate various crimes, the prosecutor would show the victim a picture of a room of defendant's house and ask her if she could identify the room. The victim was then asked whether she had been in that room with the defendant and what took place in the room. The victim would then describe an incident of sexual assault. The prosecutor then elicited testimony concerning when the event took place, referring to the August 1986 vacation to California, what grade in school the victim attended when the sexual assault occurred, whether the incident had occurred before or after Christmas, and whether it was warm or cold outside.

Crimes are not fungible. There is no way from the record before us that the prosecutor, the defendant and his counsel, the jury, the trial judge, or this court could determine which of defendant's actions violated, for example, the charges in district court case No. 43-158, also known as count III. We agree with the defendant that his ability to prepare a defense was seriously impaired due to the State's failure to sufficiently inform him with reasonable certainty of the charges against him. We hold that an information alleging the time of an offense only by reference to the period of time in a statute of limitations is insufficient as a matter of law.

In reaching our conclusion that all five convictions must be reversed, we note the substantial differences between the preliminary hearing testimony and the victim's testimony at trial. This presents another problem which we feel was raised by defendant in objecting to the amended informations.

Nebraska law is settled that a defendant is entitled to a preliminary hearing on any felony complaint. In *State v. Brevet*, 180 Neb. 616, 619, 144 N.W.2d 210, 213 (1966), we stated:

> It has long been the rule in this state that in a prosecution for a felony, in the absence of a waiver of the right to a preliminary hearing, the defendant cannot be put on trial over his objections until such preliminary hearing is

accorded him. Jahnke v. State, 68 Neb. 154, 94 N.W. 158. The statute awarding one accused of crime the right to a preliminary hearing was enacted for the benefit of the accused.

In the present case, at the preliminary hearing, Deputy Day testified that the victim had told him that she had been sexually assaulted (1) during January 1987 in the children's bedroom; (2) during a tractor ride in May 1986; (3) during September 1985, while watching television with defendant; and (4) during December 1986, in the upstairs of the Beermann home, with defendant using some type of lotion. He described four sexual assaults in the first degree. Day also described an incident of sexual touching that would constitute the sexual assault of a child.

The victim testified at trial that she had been sexually assaulted (1) between September and December 1986, while watching television with defendant; (2) between August and December 1986, on the Beermanns' waterbed; and (3) in an upstairs bedroom, with defendant using some type of lotion. She described three sexual assaults in the first degree. The victim further testified at trial that defendant had sexually assaulted her in the kitchen and in his automobile. Thus, the victim has described five criminal offenses, but not necessarily the offenses on which defendant was bound over.

Only the victim's trial testimony of the incident involving defendant's use of lotion bears a clear resemblance to Day's preliminary hearing testimony. The preliminary hearing testimony supporting the charge for sexual assault of a child involved defendant's taking the victim to an upstairs room and forcing her to touch him for his sexual gratification. The trial testimony supporting defendant's conviction for sexual assault of a child was that the sexual contact occurred in an automobile. There was no preliminary hearing testimony involving sexual contact in an automobile. There was no trial testimony regarding a tractor ride.

We recognize that the State may have been unable to determine the actual dates of the alleged offenses due to the child victim's inability to recall specifics, and acknowledge that, obviously, the State does not have a duty to disclose to an

accused information that the State does not have. See *State v. Saraceno*, 15 Conn. App. 222, 545 A.2d 1116 (1988). It is clear from the preliminary hearing testimony and the trial testimony, however, that the prosecution had information that would allow it to allege the times of the offenses with much greater specificity than to merely allege that all the offenses occurred during the 3-year statute of limitations period.

As seen from the brief summary of the preliminary hearing and the trial, as set out above, it is apparent that defendant was bound over on an offense involving his conduct while driving a tractor. No testimony at trial was adduced which stated the word "tractor," nor even remotely concerned a tractor. Therefore, the logical conclusion is that defendant has been charged with an offense that was not proved at trial. If this court could determine, with certainty, which case or count was involved in this connection, we would reverse and dismiss that charge. We cannot so determine.

Similarly, at trial, defendant was convicted, possibly in connection with count IV, of sexual assault of a child, stemming from an incident of sexual contact in a green station wagon. No such testimony concerning a station wagon or any car was even mentioned in the preliminary hearing. Logically, therefore, defendant has been convicted of a crime that he was not bound over on after a preliminary hearing. That count must be reversed for a new trial.

The error resulting from the obvious differences between crimes described at the preliminary hearing and the testimony adduced at trial was accentuated by Day's testimony at the trial. That testimony, in part, was:

Q. [by the deputy county attorney] You heard [the victim's] testimony in court today, didn't you?

A. [by Deputy Day] Yes.

Q. Was it consistent with what she told you?

A. Yes, sir.

Q. Okay. Basically, the basic facts are there?

A. Yes, sir.

Q. Okay. Based upon your training and experience, officer, and your observations of the victim, do you have an opinion whether or not [the victim] was sexually

abused?

A. Yes.

Q. What is that opinion?

A. I believe she was sexually abused.

The State and defendant have differences about whether the objections made by defendant at trial were directed to this testimony. The court had granted defendant a "continuing objection" to the testimony of corroborating witnesses. No objection was made to this testimony, but we will consider it as plain error. In the first instance, while "[b]asically, the basic facts" are set out in the child's testimony, it is certain Deputy Day did not testify at the preliminary hearing to the facts testified to by the child. The deputy's testimony is not accurate, because what he testified to at the preliminary hearing was not what the trial testimony was.

Secondly, it is totally improper for one witness to testify as to the credibility of another witness. The question of any witness' credibility is for the jury. Deputy Day's testimony may be construed as stating that the child's testimony is true. In that context, it is improper to permit any evidence that a witness is truthful, except under the provisions of Neb. Evid. R. 608 (Neb. Rev. Stat. § 27-608 (Reissue 1985)), which permits testimony, under certain conditions, concerning the character of a witness for truthfulness. This testimony was not of that type.

If the testimony can be considered a lay expert opinion, the testimony was further objectionable as in violation of Neb. Evid. R. 701 (Neb. Rev. Stat. § 27-701 (Reissue 1985)). As stated in connection with similar testimony in *State v. Romero*, 147 Wis. 2d 264, 278, 432 N.W.2d 899, 905 (1988):

> The testimony in this case was not helpful to the jury. Rather, it tended to usurp the jury's role. The credibility of a witness is left to the jury's judgment. *State v. Friedrich*, 135 Wis. 2d 1, 16, 398 N.W.2d 763 (1987). As the court of appeals declared in *State v. Haseltine*, 120 Wis. 2d 92, 96, 352 N.W.2d 673 (Ct. App. 1984), "[n]o witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth."

The subject of the testimony is not appropriate for lay expert opinion, in any event, and the testimony could not have been admissible under Neb. Evid. R. 702 (Neb. Rev. Stat. § 27-702 (Reissue 1985)), because there is no evidence that Deputy Day was an expert on the subject. The evidence was inadmissible and highly prejudicial, and sufficient to require reversal on that ground alone.

It is also clear that such testimony was not admissible as corroborating evidence of the assaults. Other cases have stated:

> "The rule is well established in this state that in a prosecution for sexual assault, *the prosecutrix may testify* in chief on direct examination, if within a reasonable time under all the circumstances after the act was committed she made complaint to another, *to the fact and nature of the complaint, but not as to its details*; and that *others may likewise testify in chief to such fact and nature of the complaint, but not as to its details. . . .*"

(Emphasis in original.) *State v. Daniels*, 222 Neb. 850, 853, 388 N.W.2d 446, 449 (1986), citing other cases.

In the case before us, Day's testimony, in effect corroborating all the testimony of the child, was testimony as to the details of the criminal incidents. Such testimony is not proper corroborating evidence, nor was Day's testimony admissible under the "complaint of rape" rule discussed in *Daniels* and many other cases. No "complaint" was made to Day, but, rather, he was called to investigate a series of crimes referred to him by a social worker.

The trial court's instructions to the jury also reflect the underlying problem. In the instructions as they affect cases Nos. 87-968, 87-969, and 87-975, the court incorrectly instructed the jury that defendant had been charged in a five-count information and that "[t]he first three counts of the Information are indentical [sic]." Although the three charges were indeed identical, they were not separate counts of a single information, but were separate cases. We repeat again that we are unable to determine when the correlations between counts and charges were made, but the charges seem to have been made after the verdicts were returned. If the verdicts were submitted to the jury in such form that the jury could think that count V

was the fifth count in case No. 43-160 and count IV was the fourth count in a different case, the jury would have to conclude that there were many more charges not submitted.

The court instructed the jury as to the material elements and lesser-included offenses of first degree sexual assault. The instructions were identical in each case and, for conviction, required that the jury find beyond a reasonable doubt that defendant

on or after the 20th day of February, 1984, and before the 20th day of February, 1987 . . . intentionally subjected the victim to sexual penetration, and the defendant either;

2. (a) Overcame the victim by force, threat of force, express or implied, coercion, or deception, so as to be able to accomplish that penetration, or

(b) Defendant knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct, or

(c) Defendant was 19 years of age or older and the victim was less than 16 years of age.

The jury instructions do not reflect the trial testimony, and it is impossible to determine from the record whether defendant was convicted of the same offense three times or was convicted of three separate offenses. Indeed, if a juror believed some of the State's evidence, but disbelieved other parts of such evidence, that juror would be hard pressed to determine the case in which he or she wanted to vote guilty or not guilty.

It is not possible for this court to hold that defendant has been afforded due process of law.

Since the causes are to be remanded, we discuss another alleged error, in that the court instructed the jury on sexual assault in the second degree. We determine that the jury should not have been instructed on either second or third degree sexual assault.

Section 28-320 provides:

(1) Any person who subjects another person to sexual contact and (a) overcomes the victim by force, threat of force, express or implied, coercion, or deception, or (b) knew or should have known that the victim was physically or mentally incapable of resisting or appraising the nature

of his or her conduct is guilty of sexual assault in either the second degree or third degree.

(2) Sexual assault shall be in the second degree and is a Class III felony if the actor shall have caused serious personal injury to the victim.

(3) Sexual assault shall be in the third degree and is a Class I misdemeanor if the actor shall not have caused serious personal injury to the victim.

Section 28-320.01 provides:

(1) A person commits sexual assault of a child if he or she subjects another person fourteen years of age or younger to sexual contact and the actor is at least nineteen years of age or older.

(2) Sexual assault of a child is a Class IV felony.

Whether "serious personal injury to the victim," as set out in § 28-320(2), and defined in Neb. Rev. Stat. § 28-318(4) (Reissue 1985), is an element of the crime of second degree sexual assault or simply a jury determination of the degree of the crime committed need not be decided in this case. The controlling fact is that for the defendant to be convicted of second degree sexual assault, there must be a jury determination as to whether the victim suffered "serious personal injury." Before such a question is submitted to the jury, the court must determine, as a matter of law, if there is enough evidence on the question for the jury to consider it. See *State v. Hogan*, 194 Neb. 207, 231 N.W.2d 135 (1975).

In this case, there was literally no evidence as to any such injury. Section 28-318(4) provides that "[s]erious personal injury shall mean great bodily injury or disfigurement, extreme mental anguish or mental trauma, pregnancy, disease, or loss or impairment of a sexual or reproductive organ." The jury was so instructed. There was no evidence in the trial of bruises or beatings. No psychologist testified. No medical witness testified, and the only medical evidence submitted was a stipulation between the parties that "if Dr. Waltson were called to testify, he would state that as a part of the investigation, [the victim] was examined in his office on February 9, 1987, by Ted Deadman, a physical's assistance [sic] who found her hymen to be entact [sic]." Where there is no evidence as to a crime, that

crime should not be submitted to the jury. In this case, sexual assault in the second degree should not have been submitted to the jury as a separate crime or as a lesser-included crime.

In connection with that issue, we note that in each of the three first degree sexual assault cases, the court submitted to the jury all the elements in the statute as to first degree sexual assault. When the evidence is considered as a whole, there was really no evidence as to the factors set out in § 28-319(1)(a) and (b), in that the defendant did not use force nor did the State attempt to prove the victim was incapable of resisting or understanding. The State's case was clearly within the provisions of § 28-319(1)(c), in that the State established the defendant was 35 years old and the victim 10. Subsections (1)(a) and (b) were superfluous to the crimes charged against defendant and should not have been included in the instructions given, although there does not appear to be prejudicial error in the instructions.

Nonetheless, if properly submitted under § 28-319(1)(c), there is a serious question whether the offenses listed in §§ 28-320 and 28-320.01 are lesser-included offenses of sexual assault in the first degree. We have held:

"The test for determining whether a lesser-included offense exists in this jurisdiction is that a lesser-included offense is one which is necessarily established by proof of the greater offense. To be a lesser-included offense, the elements of the lesser offense must be such that it is impossible to commit the greater without at the same time having committed the lesser. . . ."

*State v. Arthaloney*, 230 Neb. 819, 822, 433 N.W.2d 545, 547 (1989).

It is apparent that assault in the second or third degree as defined in the statute requires proof of force, deception, or lack of knowledge on the part of the victim. A defendant may violate § 28-319(1)(c) without exerting force in any degree. Proof of sexual assault under § 28-319(1)(c), the greater offense, may be made without in any way proving a violation of § 28-320, the lesser offense.

Similarly, with regard to § 28-320.01, the greater offense of sexual assault in the first degree under § 28-319(1)(c) might be

proved by establishing that the defendant is over 19 years of age and the victim is 15 years old, that is, less than 16. Such proof would not necessarily establish a violation of § 28-320.01, which requires that the victim be less than 14. Sexual assault of a child is not a lesser-included offense of first degree sexual assault.

The allegations of sexual assault in the second or third degree should not have been submitted to the jury, in this case, either as a separate charge or as a lesser-included offense of sexual assault in the first degree, as defined in § 28-319(1)(c).

The conviction of defendant in each case is reversed and the causes remanded for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.